UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

STATE OF ARIZONA, *et al.*,

    Plaintiffs,

vs.

JOSEPH R. BIDEN, *et al.*,

    Defendants.

Case No. 3:21-cv-314

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

_____

**ORDER: (1) DENYING DEFENDANTS' MOTION TO TRANSFER (DOC. NO. 7); (2) LIFTING THE STAY ON BRIEFING OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION; AND (3) SETTING A BRIEFING SCHEDULE ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**
_____

Plaintiffs, the States of Arizona, Montana, and Ohio, bring this action to prevent the Department of Homeland Security ("DHS") from implementing civil immigration enforcement guidance they say is unlawful. Doc. Nos. 1, 1-1. Defendants[1] believe this case should be heard in the U.S. District Court for the District of Arizona and have moved to transfer it there. Doc. No. 7. DHS's venue motion is fully briefed and ripe for review. Doc. Nos. 10, 12. For the following reasons, the Court denies DHS's motion and will retain this case.

**I.**    **Background**

DHS's civil immigration enforcement policy has shifted since President Joseph R. Biden's inauguration on January 20, 2021. Doc. No. 7 at PageID 368–70. At issue in this case is DHS's September 30, 2021 Guidelines for the Enforcement of Civil Immigration Law ("Permanent Guidance"). Doc. No. 1-1. This is not the first challenge to the Biden Administration's

---

[1] For ease of reference, the Court will refer to Defendants collectively as the Department of Homeland Security ("DHS").

immigration enforcement guidance: at least six such lawsuits have been filed in district courts around the country.[2]  Relevant to the instant motion is Arizona and Montana's (but not Ohio's) lawsuit in the District of Arizona, now pending appeal, that attempted to halt previous iterations of the Permanent Guidance.  *Arizona v. U.S. Dep't of Homeland Sec.*, No. 2:21-cv-186, 2021 WL 2787930 (D. Ariz. June 30, 2021), *appeal pending*, No. 21-16118 (9th Cir.).

    A.    **Arizona and Montana Sue DHS in Arizona**

        1.    **The January 20 Memo**

On January 20, 2021, DHS Acting Secretary David Pekoske issued a department-wide memorandum entitled, "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities" (the "January 20 Memo").  Doc. No. 4-3.  Section A ordered DHS's chief of staff to "coordinate a Department-wide review of policies and practices concerning immigration enforcement."  *Id.* at PageID 145.  Section B instructed staff to focus their civil immigration enforcement efforts on noncitizens who present a threat to national or border security or public safety.  *Id.*  Section C announced a 100-day pause on all removals of noncitizens with a final order of deportation.  *Id.* at PageID 146.[3]

Arizona and Montana sued DHS in the U.S. District Court for the District of Arizona on February 3, 2021 seeking to block enforcement of the January 20 Memo.  *Arizona*, No. 2:21-cv-186, Doc. No. 1.  They claimed DHS violated 8 U.S.C. § 1231(a) -- which provides "the Attorney

---

[2] Complaint, *Coe et al. v. Biden et al.*, No. 3:21-cv-168 (S.D. Tex. July 1, 2021); Complaint, *Texas et al. v. United States et al.*, No. 6:21-cv-16 (S.D. Tex. Apr. 6, 2021), *injunction stayed in part by* 14 F.4th 332 (5th Cir. 2021), *granting petition for reh'g en banc*, No. 21-40618 (5th Cir. Nov. 30, 2021), *withdrawing order granting en banc rev.*, No. 21-40618 (5th Cir. Dec. 2, 2021); Complaint, *Florida v. United States et al.*, No. 8:21-cv-541 (M.D. Fla. Mar. 8, 2021); Complaint, *Arizona et al. v. U.S. Dep't of Homeland Sec. et al.*, No. 2:21-cv-186 (D. Ariz. Feb. 3, 2021), *appeal pending*, No. 21-16118 (9th Cir.); Complaint, *Texas v. United States et al.*, No. 6:21-cv-3 (S.D. Tex. Jan. 22, 2021).
[3] A temporary restraining order of Section C's 100-day removal pause quickly issued in the Southern District of Texas.  *Texas v. United States*, 515 F. Supp. 3d 627, 631 (S.D. Tex. 2021).  DHS did not appeal the nationwide injunction.

2

General shall remove [an alien with a final order of deportation] from the United States within a period of 90 days" -- by suspending all removals. *Id.* DHS -- in the States' view -- also violated the Administrative Procedure Act ("APA") by promulgating a rule without following the APA's notice-and-comment procedures. *Id.*

### 2. Interim Guidance

Acting Immigration and Customs Enforcement ("ICE") Director Tae D. Johnson issued updated guidance to ICE staff on February 18, 2021 ("Interim Guidance"). Doc. No. 4-6. The Interim Guidance expanded on the enforcement priority categories identified in the January 20 Memo. *Id.* at PageID 156. Noncitizens who presented national or border security or public safety threats were now presumed to be removable. *Id.* at PageID 159–60. ICE staff were given certain criteria to evaluate whether a noncitizen posed a risk to public safety, such as the "extensiveness, seriousness, and recency of the criminal activity" or mitigating factors like "personal and family circumstances" and "ties to the community." *Id.* at PageID 160. The Interim Guidance clarified that no prior approval was necessary for presumed enforcement or removal cases but was required for all other noncitizens. *Id.* at PageID 160–61. Acting Director Johnson noted the Interim Guidance would control until the DHS Secretary issued permanent enforcement guidelines. *Id.* at PageID 156.

On March 8, 2021, Arizona and Montana added the Interim Guidance to their challenge and moved for a preliminary injunction. *Arizona*, No. 2:21-cv-186, Doc. Nos. 12, 13. The district court denied the States' motion for a preliminary injunction upon concluding the Interim Guidance was not subject to judicial review under the APA. *Arizona*, 2021 WL 2787930, at *11.[4] Arizona

---

[4] The court also dismissed as moot the States' attack on Section C of the January 20 Memo considering the Southern District of Texas' nationwide injunction of the removal pause. *Arizona*, 2021 WL 2787930, at *5.

3

and Montana appealed. Notice of Appeal, *Arizona*, No. 2:21-cv-186, Doc. No. 92 (D. Ariz. June 30, 2021).

### 3. Permanent Guidance

On September 30, 2021, while their appeal was pending before the Ninth Circuit, DHS Secretary Alejandro N. Mayorkas issued the Permanent Guidance. Doc. No. 1-1. The Permanent Guidance expanded on the Interim Guidance in two main ways. *Compare id.*, *with* Doc. No. 4-6. First, it expanded the aggravating and mitigating factors ICE staff must weigh when assessing whether a noncitizen poses a public safety risk. Doc. No. 1-1 at PageID 26. Staff are instructed to evaluate the gravity of the noncitizen's criminal offense and sentence imposed; the harm caused; the sophistication of the crime; whether a firearm or dangerous weapon was used; and whether the noncitizen has a "serious" criminal record. *Id.* Staff must weigh mitigating factors before commencing enforcement proceedings, such as: age; length of presence in the United States; the noncitizen's mental or physical health; status as a victim of, or witness to, a crime; the impact deportation would have on the noncitizen's family; military service; evidence of rehabilitation; or expungement. *Id.* at PageID 26–27.

Noncitizens are no longer presumed to be an enforcement or removal priority if they meet the Permanent Guidance's criteria. *Id.* Nor is preapproval necessary before ICE staff institute enforcement or removal proceedings against a noncitizen who does not meet a priority category. *Id.* Upon the Permanent Guidance's November 29, 2021 effective date, DHS was to withdraw the January 20 Memo and Interim Guidance. *Id.* at PageID 29.

DHS petitioned the Ninth Circuit to stay briefing on Arizona and Montana's appeal until the Permanent Guidance went into effect. Appellees' Brief, *Arizona*, No. 21-16118, Doc. No. 41 (9th Cir. Oct. 4, 2021). DHS signaled it would argue the Permanent Guidance moots their appeal. *Id.* Arizona and Montana disagreed, contending that the Ninth Circuit can afford "effectual relief"

by enjoining DHS's ongoing statutory violations that will allegedly continue beyond the Permanent Guidance's effective date. *Id.* at Doc. No. 42. The Ninth Circuit agreed to stay appellate proceedings until November 29, 2021 and gave the States until December 6, 2021 to either file a status report or move for appropriate relief. *Id.* at Doc. No. 45.

      **B.**      **Arizona, Montana, and Ohio Challenge the Permanent Guidance in this Court**

Here is where the case now before this Court fits in. On November 18, 2021, Arizona and Montana joined Ohio in filing a complaint and corresponding motion for a preliminary injunction to enjoin the Permanent Guidance. Doc. Nos. 1, 4.[5] DHS now asks the Court to transfer this action to the District of Arizona. Doc. No. 7. It believes that Arizona and Montana are attempting to avoid unfavorable precedent by adding a nominal plaintiff (a characterization Ohio rejects) to lay venue in a new circuit. *Id.* at PageID 367–68. Transfer to the District of Arizona is appropriate, DHS insists, to prevent Arizona and Montana from maintaining a live appeal in the Ninth Circuit while simultaneously challenging the Permanent Guidance before this Court. *Id.* at PageID 371.

Plaintiffs offer a three-fold counter. Doc. No. 10. First, they assert that Ohio has a legitimate interest in this litigation because, in its view, the Permanent Guidance will force it to devote more resources towards externalities created by illegal immigration. *Id.* at PageID 387. They point out that, were the Court to send this case to Arizona, Ohio could voluntarily dismiss itself and re-file its complaint here. *Id.* at PageID 384. Second, Plaintiffs view this case and the Ninth Circuit appeal as challenging distinct administrative actions that can run their course in separate circuits. *Id.* at PageID 385. Finally, Plaintiffs accuse DHS of similar gamesmanship in the Ninth Circuit by trying to stall the completion of merits briefing there. *Id.* at PageID 385–86.

---

[5] This Court stayed briefing on Plaintiffs' motion for a preliminary injunction pending its disposition on DHS's motion to transfer. Doc. No. 16.

The Court now turns to DHS's transfer motion.

## II. Change of Venue

28 U.S.C. § 1404(a) governs change of venue. A two-part test guides the analysis: (1) whether the plaintiff could have brought the action in the transferee court; and (2) whether the parties' considerations and the interests of justice support transfer. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)). When the considerations are equal, and the arguments on both sides are justifiable, the court may exercise discretion to retain the case. *See id.* (upholding the district court's refusal to transfer venue when the key parties and location were in another district, but retaining the case would allow the court to apply the same law used to adjudicate a parallel lawsuit between the parties arising from the same circumstances).

The Court makes this decision "on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citing *Stewart Org.*, 487 U.S. at 29). "For a change of venue to be appropriate, the balance of convenience must weigh heavily in favor of the transfer; § 1404(a) is not intended to shift an action to a forum likely to prove equally convenient or inconvenient." *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 761 (S.D. Ohio 2013) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964)). The Court considers "the convenience of the parties and witnesses, public-interest factors, and private interest factors." *Id.* at 762 (citing *Stewart Org.*, 487 U.S. at 30).

### III. Analysis

#### A. This Case Could Have Been Brought in the District of Arizona

Initially, the Court reviews whether the parties could have brought the case in the transferee court. *See Sky Tech. Partners LLC v. Midwest Rsch. Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000). A case could have been brought in the transferee court if: (1) the transferee court would have subject matter jurisdiction; (2) venue is proper in the transferee court; and (3) the defendants are "amenable to process issuing out of the transferee court." *Id.* (first citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); and then citing *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 271 (S.D. Ohio 1981)). Here, because (1) there is a federal question; (2) Arizona alleges that the Permanent Guidance's civil immigration enforcement priority shift will directly affect its financial interests; and (3) personal jurisdiction would be proper in Arizona, this prong is satisfied. 28 U.S.C. §§ 1331 and 1401.

#### B. Public and Private Interest Factors Support Retention

Several public and private interest factors may justify a venue transfer. *Reese*, 574 F.3d at 320. Public interest factors include: "(1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law." *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)). The Court may also weigh certain private-interest factors, such as: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Hefferan v. Ethicon-Endo Surgery Inc.*, 828 F.3d 488, 498 (6th Cir. 2016) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Avoiding a multiplicity of litigation can be a factor relevant to "the interest of justice." *See, e.g.*, *Cont'l Grain Co.*, 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent"). But this concern dissipates when the multiple cases are factually dissimilar. *Compare Kline v. Gemini Transp., LLC*, No. 16-cv-13157, 2016 WL 7210695, at *2–3 (E.D. Mich. Dec. 13, 2016) (ordering transfer where issues involved a single automobile accident in Indiana), *with W. & S. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 1:11-cv-00267, 2011 WL 3837094, at *4 (S.D. Ohio Aug. 30, 2011) (denying transfer although the securities case involved "similar practices, registration statements, and prospectuses" as a California case because other factors supported retention and the "underlying offerings differ[ed]").

Adding Ohio to this litigation renders the interests at stake distinct from the Arizona case. Ohio explains that it devotes resources towards providing healthcare and education to noncitizens. Doc. No. 1 at PageID 13–14. It also attributes the flow of fentanyl into the State to increased drug trafficking at the southern border. *Id.* at PageID 14. Ohio predicts that a decrease in deportations under the Permanent Guidance would force it to spend more on healthcare, education, and public safety. *Id.* at PageID 13–14.

DHS acknowledges that Ohio's asserted interests allow it to lay venue in this Court. Doc. No. 7 at PageID 368. Indeed, if this case were transferred, Ohio could dismiss itself from the case and re-file a standalone complaint in this Court. Doc. No. 10 at PageID 384. Respecting Ohio's choice of forum will avoid "the waste of time, energy, and money that § 1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26 (cleaned up).

Likewise, the two cases involve challenges to sufficiently different policies. The Permanent Guidance, though it builds on the Interim Guidance, provides more specific factors for ICE staff to evaluate before initiating enforcement or removal proceedings. *Compare* Doc. No. 1-1, *with* Doc. No. 4-6. For instance, the Permanent Guidance's public safety priority category requires staff to evaluate more than just the noncitizen's crime as an aggravating factor. Doc. No. 1-1 at PageID 26. Staff must also weigh the cost deportation might impose on the noncitizen's family before pursuing enforcement. *Id.* The Permanent Guidance, by removing the Interim Guidance's presumptions and preapproval instructions, gives staff more flexibility to decide which enforcement cases to bring. *Compare* Doc. No. 1-1, *with* Doc. No. 4-6.

Duration matters too. DHS intends the Permanent Guidance to control longer than the Interim Guidance. *Compare* Doc. No. 1-1 at PageID 29, *with* Doc. No. 4-6 at PageID 156. Indeed, DHS was to rescind the January 20 Memo and Interim Guidance on November 29, 2021. Doc. No. 1-1 at PageID 29. Differences between the two policies are abundant enough to avoid identical, duplicitous litigation. *Compare* Doc. No. 1-1, *with* Doc. No. 4-6.

Still, DHS contends that Arizona and Montana hope to litigate the Permanent Guidance before the Ninth Circuit. Doc. No. 12 at PageID 395. DHS points to Arizona and Montana's request for the Ninth Circuit to award "effectual relief" for alleged statutory violations that will occur after November 29, 2021, as proof. *Id.* (citing Appellants' Br., *Arizona*, No. 21-16118, Doc. No. 42 (9th Cir. Oct. 12, 2021)). The Court reads the States' argument differently: they contend the alleged harm caused by the Interim Guidance will continue even after it is rescinded. *Id.* But, in any event, what Arizona and Montana's argument means is for the Ninth Circuit to decide. What matters for purposes of the motion before this Court is that the order on appeal there concerns the Interim Guidance, not the Permanent Guidance. Notice of Appeal, *Arizona*, No. 2:21-cv-186,

Doc. No. 92 (D. Ariz. June 30, 2021). Plaintiffs here acknowledge as much. Doc. No. 10 at PageID 385. Thus, the similarities DHS sees between these two cases do not favor transfer.

Several other relevant factors weigh in favor of retention. First, while three states are allegedly harmed in this case, Ohio's choice of venue is entitled to some degree of deference. *See Reese*, 574 F.3d at 320. Ohio's interest makes the controversy "local" in the sense that the Permanent Guidance will allegedly harm Ohio. This weighs in favor of keeping the case. *See, e.g., Hefferan*, 828 F.3d at 500 (finding Germany's interest in redress for injured German citizens justified venue in Germany). Second, this case arises under federal law. While a judge in the District of Arizona may be more familiar with the specific case (assuming it is even transferred to the same judge who handled the case before the Ninth Circuit), this would not supersede the ability of any other federal court to solve immigration law issues. *See, e.g., United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 890 (N.D. Ohio 1999) (noting that the court was just as capable as other district courts to adjudicate an Americans with Disabilities Act claim).

Third, all the parties involved are governmental entities, so no particular forum would be more convenient than Ohio, as evidence and potential witnesses (if any) will come from all over the country, regardless of venue. *See, e.g., United States ex rel. Grand v. Northrop Corp.*, 811 F. Supp. 330, 332 (S.D. Ohio 1992). However, the Court acknowledges that two of the three states in the litigation are located in the Ninth Circuit, so this weighs slightly in favor of transfer. *See B.E. Tech., LLC v. Groupon, Inc.*, 957 F. Supp. 2d 939, 948–49 (W.D. Tenn. 2013). Finally, this matter affects the public interest, so the Court should move to resolve it "without delay for the sake of all parties." *United States ex rel. Grand*, 811 F. Supp. at 332 (citing *AMF, Inc. v. Comput. Automation, Inc.*, 532 F. Supp. 1335, 1343 (S.D. Ohio 1982)). On balance, the public and private interest factors do not favor transfer. *See, e.g., Reese*, 574 F.3d at 320.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** DHS's motion to transfer. Doc. No. 7. The Court hereby **LIFTS** the stay on the briefing schedule for Plaintiffs' motion for a preliminary injunction. Doc. No. 16. DHS shall file an opposition memorandum in response to Plaintiffs' preliminary injunction request on or before **December 27, 2021**. Plaintiffs shall file a reply brief **14 days** from the filing of DHS's opposition memorandum.

The Court intends to schedule an in-person oral argument on Plaintiffs' motion for a preliminary injunction. An order setting a status conference to discuss the date and time of oral argument will issue by separate entry.

**IT IS SO ORDERED**.

Date:   December 6, 2021                             s/Michael J. Newman
                                                    Hon. Michael J. Newman
                                                    United States District Judge